## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

GILBERT ALONSO-PORTILLO,

     Petitioner,

     v.

PAMELA BONDI, Attorney General
of the United States, et al.,

     Respondents.

Case No. 1:25-CV-306

Judge Michael R. Barrett

**OPINION & ORDER**

     Gilbert Alonso-Portillo brings this petition for a writ of habeas of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 6). Alonso-Portillo is currently held in pre-removal detention at the Butler County Jail on behalf of federal immigration authorities. He seeks immediate judicial review of his detention, a declaration that his continued custody is unlawful, and an order for his immediate release on bond. (*Id.*, PageID 38).

## I.    FACTUAL BACKGROUND

     Alonso-Portillo, a native and citizen of Mexico, is an undocumented immigrant[1] who has resided continuously in the United States for approximately seventeen years. (*Id.*, PageID 42-43). On April 7, 2025, agents of United States Immigration and Customs Enforcement ("ICE"), the Federal Bureau of Investigation ("FBI"), and Homeland Security Investigations ("HIS"), entered Alonso-Portillo's home and

---

[1] The Court recognizes Alonso-Portillo's assertion that he "indisputably satisfies" the statutory criteria for cancellation of his removal. (Doc. 21, PageID 197-98). But that assertion does not establish that he is in the United States lawfully. And the record contains additional evidence that Alonso-Portillo is in the United States unlawfully and is aware of that fact.

conducted a search. The agents recovered firearms and ammunition, at which point Alonso-Portillo was detained. Alonso-Portillo was then presented with a notice to appear, marking the initiation of removal proceedings; he has remained in detention ever since.

Following a hearing on April 22, 2025, an Immigration Judge ("IJ") denied bond, finding on the basis of Alonso-Portillo's possession of firearms and ammunition that he had failed to demonstrate that he was not a danger to the community. (Doc. 21, PageID 257-58). Alonso-Portillo appealed the denial of bond, and that appeal remains pending with the Board of Immigration Appeals ("BIA").

At the bond hearing, Alonso-Portillo initially pleaded to the charges set forth in the notice to appear, conceding his removability. (Doc. 19, PageID 96). The IJ sustained the charge. Subsequently, on May 27, 2025, Alonso-Portillo filed an application to cancel that removal charge. (*Id*.). A hearing on that application took place on July 21, 2025.

Alonso-Portillo has no criminal history, and his arrest has not led to any criminal charges. Alonso-Portillo seeks immediate judicial review of his detention and an order for his immediate release on bond. Respondents to this petition are Pamela Bondi, Attorney General of the United States; Kristi Noem, Secretary of the United States Department of Homeland Security; Todd Lyons, acting Director of the United States Immigration and Customs Enforcement; Kash Patel, Director of the Federal Bureau of Investigation; and Robert Lynch, Director of the Detroit Field Office for ICE. These facts are not in dispute.

## II.    PARTIES' FACTUAL ASSERTIONS

The following facts _are_ in dispute.

Respondents maintain that on April 7, 2025, Homeland Security Task Force ("HSTF") agents obtained an administrative warrant of arrest for Alonso-Portillo and __then__ proceeded to his residence where they executed the warrant outside of his residence. (_Id._, PageID 79-80, 89). Respondents state that in response to questioning by an HSTF agent, Alonso-Portillo admitted to being in the United States unlawfully and also admitted to owning a firearm that was inside his residence. (_Id._, PageID 80, 89). According to Respondents, Alonso-Portillo then verbally consented to a search of his residence by the HSTF agents. Finally, Respondents state that on that same day, April 7, 2025, a notice to appear was issued for Alonso-Portillo, which initiated removal proceedings. (_Id._, PageID 81).

Alonso-Portillo disputes all of this. His version of the underlying facts is as follows:

> On April 7, 2025, Petitioner was arrested at his home by unidentified men. See _Pet'r's Aff._, Ex. 2. These men demanded to know his immigration status. _Id_. When Petitioner refused to answer, they told him he was under arrest on suspicion of being in the country unlawfully and demanded that he hand over any firearms in the home. _Id_. They then handcuffed him and verbally identified themselves as ICE officers. _Id_. When Petitioner declined to open the door so they could search for firearms, the men took his house keys without permission. _Id_. Petitioner then called his wife and instructed her to let the men into the home so that he could give them the firearms. _Id_. At no time during the arrest, the search of the home, or thereafter was Petitioner shown a warrant of any kind. _Id_.

3

> After the men arrested Petitioner, entered his home
> without consent, and confiscated his firearms, they
> brought him to the ICE processing facility in Blue Ash,
> Ohio, where they presented him with a document he could
> not read and asked him to sign it. *Pet'r's Aff.*, Ex. 2, ¶ 13.
> They did not translate the document, and Petitioner
> refused to sign it. *Id*; see also *Notice to Appear*, Ex. 7; *Notice
> of Custody Determination*, Ex. 10. Although both
> documents state that they were provided to Petitioner in
> Spanish, Petitioner disputes this. See *Pet'r's Aff.*, Ex. 2 ¶
> 13.

(Doc. 21, PageID 185).

Alonso-Portillo argues that the search of his home, the seizure of his firearms, and his arrest were unlawful under the Fourth Amendment because those actions were not supported by any probable cause, a valid judicial warrant, exigent circumstances, consent, a valid removal order, or criminal charges. He maintains that the administrative warrant and removal order relied upon by Respondents were issued *after* his arrest and were falsified to appear as if they had been issued *prior* to his arrest. (*Id.*, PageID 178-79; *see id.*, PageID 214-17).

He contends that his immigration status was *not* known to ICE agents at the time of his arrest. "It necessarily follows," he continues, "that the warrant was either fabricated after the fact to retroactively justify the seizure or that no such warrant existed at the time of entry." (*Id.*, PageID 189). Alonso-Portillo thus denies that he was presented a warrant, in English or Spanish, when Respondents approached him at his residence. (*Id.*, PageID 181, 185, 189). And he denies that he voluntarily admitted to being in the United States unlawfully prior to his arrest. (*Id.*, PageID

182).

Alonso-Portillo further asserts that any consent to search his home was coerced after agents threatened to return with a warrant and to detain his wife if he did not allow them to enter. (*Id.*, PageID 182-83, 190). Alonso-Portillo argues that the firearms and ammunition seized were lawfully possessed (and properly stored) because Ohio permits open and concealed carrying of firearms by anyone over the age of 21 and not otherwise disqualified. (Doc. 6, PageID 42). Alonso-Portillo posits that he "was targeted based solely on his appearance and manner of speaking—markers associated with this identity as an immigrant." (*Id.*, PageID 39; *see also* Doc. 21, PageID 191-92).

## III. PARTIES' LEGAL ARGUMENTS

### A. Alonso-Portillo

Alonso-Portillo argues that a writ of habeas corpus is warranted because his detention is unconstitutional and because no adequate alternative remedy exists. (Doc. 6, PageID 50, citing *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *INS v. St. Cyr*, 533 U.S. 289, 314 (2001)). He insists that "[a]t this juncture to proceed further, Petitioner needs to show only a prima facie case," and asserts that he has made a prima facie case of a Fourth Amendment violation that renders his detention unconstitutional. (Doc. 21, PageID 178). "Dismissal is inappropriate," Alonso-Portillo argues, "where factual disputes exist and the legal sufficiency of detention is contested." (*Id.*, PageID 181). He asserts that he has exhausted all administrative remedies because the appeal of his bond denial and the application to cancel his

removal order are pending. (*Id.*, PageID 198-99). In response to the argument that the Immigration and Nationality Act ("INA") exempts discretionary immigration decisions from habeas corpus review, Alonso-Portillo emphasizes that "[c]ourts have consistently permitted habeas relief where immigration-related detention results from unconstitutional enforcement actions." (*Id.*, PageID 183, citing *Jimenez v. Nielsen*, 334 F. Supp. 3d 370, 381-82 (S.D.N.Y 2018)).

To that point, Alonso-Portillo reiterates that he is challenging the lawfulness of his ongoing detention on the basis of the defective search, seizure, arrest, and bond determination. Again, as to the search, seizure, and arrest, Alonso-Portillo maintains that the agents had no warrant or removal order at the time of the search and arrest. He adds that even assuming agents had an administrative warrant, that warrant lacks the constitutional sufficiency of a judicial warrant issued by a neutral magistrate. (*Id.*, PageID 182, 193-95).

Alonso-Portillo emphasizes that because he had no prior criminal or immigration record, as demonstrated by Respondents' own exhibits, agents lacked any probable cause to arrest him. (*Id.*, PageID 183, 189-90, 195). Alonso-Portillo reasons that because the agents' actions constituted an unlawful search and seizure, any evidence obtained during that search—including the presence of firearms and the subsequent revelation of his immigration status—are fruits of an unlawful search and seizure which cannot serve as the basis for continued detention. (*Id.*, PageID 187-89).

Alonso-Portillo also argues that his bond hearing was constitutionally

defective, in violation of his Fifth Amendment right to due process, because the IJ relied on lawful firearm possession as evidence of dangerousness. (Doc. 6, PageID 39; Doc. 21, PageID 187). Alonso-Portillo posits that the IJ's reliance on his possession of firearms as evidence of his dangerousness was tantamount to finding that his mere unlawful presence established dangerousness. (Doc. 21, PageID 187). In addition, Alonso-Portillo continues, the IJ failed to consider other factors such as the absence of criminal conduct, the lack of a removal order at the time of his arrest, and his strong ties to the community. Alonso-Portillo maintains that his possession of firearms was lawful and protected by the Second Amendment to the United States Constitution and by Article I, Section 4 of the Ohio Constitution.

Alonso-Portillo next argues that the government's actions violated his right to Equal Protection under the Fifth Amendment because he was treated differently from similarly situated American citizens, vis-à-vis what he contends was his lawful possession of firearms, solely on the basis of his immigration status and perceived foreignness. (Doc. 6, PageID 47).

In his reply, Alonso-Portillo argues for the first time that his arrest chills the exercise of First Amendment rights because Respondents seized upon, as evidence of dangerousness, a sign outside of Alonso-Portillo's home stating that the home was protected by firearms. (Doc. 21, PageID 195-96). Alonso-Portillo also argues for the first time in his reply that because he indisputably satisfies the conditions for cancellation of removal under 8 U.S.C. § 1229b(b)(1), his removal is not sufficiently foreseeable to justify his continued detention. (*Id.*, PageID 197-98).

### B. Respondents

According to Respondents, Alonso-Portillo has been in the United States unlawfully for nearly 20 years and "[t]herefore, is an inadmissible alien subject to deportation." (Doc. 19, PageID 79, citing INA § 212(a)(6)(A)(i); § 237 (8 U.S.C. § 1227(a)(1)). Respondents state that because Alonso-Portillo is "inadmissible and deportable," HSTF agents obtained an administrative "I-200 Warrant of Arrest of Alien" and then executed it at Alonso-Portillo's residence on April 7, 2025. (*Id.*, PageID 80). Respondents note that at Alonso-Portillo's residence, "he openly displayed a sign warning the public, 'ATTENTION' 'THE OWNER OF THE PROPERTY IS ARMED [IMAGE OF HANDGUN] AND PREPARED TO PROTECT LIFE AND PROPERTY FROM CRIMINAL OFFENSE. THERE IS NOTHING INSIDE WORTH RISKING YOUR LIFE FOR!'" (*Id.*).

Respondents assert that in response to questioning by HSTF agents, Alonso-Portillo admitted that he was unlawfully present in the United States. (*Id.*). Respondents also state that Alonso-Portillo admitted to having firearms inside his residence and then gave verbal consent for agents to search his residence. Agents seized a .40 caliber handgun, and AK-style rifle, and more than 1,000 rounds of .40 caliber ammunition. (*Id.*, PageID 81).

Respondents argue that Alonso-Portillo's detention pending removal is lawful. Specifically, Respondents point to the IJ's observation that a violation of 18 U.S.C. § 922(g)(5), which prohibits persons not lawfully in the country from possessing firearms, is a felony under federal law and an aggravated felony under the INA. (*Id.*,

PageID 81). At the bond hearing, according to Respondents, Alonso-Portillo pleaded to the charges in his notice to appear, admitting that he was removable.[2]

Respondents offer several arguments for why the Court should dismiss Alonso-Portillo's habeas corpus action. First, Respondents argue that this Court lacks subject matter jurisdiction because 8 U.S.C. § 1226(e) prohibits a noncitizen from challenging "a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release." (*Id.*, PageID 82). "So, to the extent Alonso-Portillo is challenging ICE's decision to arrest and detain him," Respondents argue, "the Petition must be denied for want of jurisdiction." (*Id.*, PageID 83).

Respondents acknowledge that district courts within the Sixth Circuit have exercised jurisdiction over due process claims brought in habeas when petitioners are challenging the constitutionality of an arrest and detention. (*Id.*). But they argue that a petitioner seeking habeas corpus relief must first exhaust all administrative remedies, which, according to Respondents, Alonso-Portillo has not done. Respondents further argue that Alonso-Portillo has not satisfied any of the exceptions upon which a district court could excuse the judge-made exhaustion requirement, to wit: (1) a long exhaustion process that would create undue prejudice; (2) the inadequacy of the administrative remedy; or (3) futility of the appeal where the agency has predetermined the issue. (*Id.*, PageID 83-84).

Respondents next argue that Alonso-Portillo's detention pending a decision

---

[2] Alonso-Portillo subsequently filed an application to cancel his removal.

about his removal is authorized by statute. Specifically, they assert that a noncitizen in removal proceedings is subject to detention during those proceedings. (*Id.*, PageID 85, citing 8 U.S.C. § 1226(a); *Jennings v. Rodriguez*, 538 U.S. 281, 289 (2018)). According to Respondents, this statutory framework rebuts Alonso-Portillo's argument that his detention violates the INA and Due Process Clause of the Fifth Amendment. Moreover, according to Respondents, Alonso-Portillo offers no authority suggesting that ICE was required to seek a criminal arrest warrant in order to him. (*Id.*, PageID 85-86, citing *Tenorio-Serrano v. Driscoll*, 324 F. Supp. 3d 1053, 1066 (D. Ariz. 2018)).

Respondents' third argument is that Alonso-Portillo's detention is constitutionally permissible. They note that Alonso-Portillo received due process because he had a bond hearing and continues to contest the bond denial on appeal before the BIA. With respect to Alonso-Portillo's claim that he was denied bond solely on the basis of his lawful conduct of possessing firearms in his home and that the IJ failed to consider other relevant factors favoring bond, Respondents argue that district courts have no authority to challenge an IJ's discretionary weighing of the evidence. (*Id.*, PageID 87-88, citing *Diaz-Calderon v. Barr*, 535 F. Supp. 3d 669, 676 (E.D. Mich. Nov. 10, 2020)). Even if that were not the case, Respondents claim that Alonso-Portillo failed to meet his burden to prove that he was not a danger to the community because, contrary to Alonso-Portillo's assertion, "an alien, unlawfully present in the United States, is prohibited from owning firearms." (*Id.*, PageID 88 (citing 18 U.S.C. § 922(g)(5)(A)).

Beyond their assertion that Alonso-Portillo received due process, Respondents argue that his detention is constitutional because his arrest and search comported with the Fourth Amendment. Respondents reiterate their positions that ICE agents obtained an administrative arrest warrant _before_ arriving at Alonso-Portillo's residence; that Alonso-Portillo admitted that he was in the United States unlawfully; and that Alonso-Portillo admitted to having firearms in his residence and verbally consented to a search. (_Id._, PageID 89-90). Even if a Fourth Amendment violation occurred, Respondents continue, "the Sixth Circuit has previously observed, that '[t]he exclusionary rule does not apply in immigration proceedings absent an egregious violation of the Fourth Amendment.'" (_Id._, PageID 90, quoting _Nolasco-Gaspar v. Holder_, 581 F. App'x 546, 546 (6th Cir. 2014)). Respondents argue that Alonso-Portillo fails to allege facts sufficient to establish that his arrest and search were an "egregious" violation of the Fourth Amendment.

Continuing with their argument that Alonso-Portillo's detention is constitutionally permissible, Respondents dispute Alonso-Portillo's argument that his detention violates his Second Amendment rights and Fifth Amendment liberty interests. Respondents reiterate that Alonso-Portillo was not in lawful possession of firearms because 18 U.S.C. § 922(g)(5)(A) prohibits persons in the United States unlawfully from possessing firearms.

Finally, Respondents dispute Alonso-Portillo's Equal Protection claim as grounds for finding his continued detention unconstitutional. Reiterating that Alonso-Portillo was not lawfully entitled to possess firearms, Respondents deny that

he was treated differently from similarly situated citizens. (*Id.*, PageID 92).

## IV.  CONTROLLING LAW AND ANALYSIS

The Court understands Alonso-Portillo to be raising Fifth Amendment Due Process and Equal Protection claims, Fourth Amendment Search and Seizure Claims, a Second Amendment claim, and a First Amendment claim challenging (1) the constitutionality and/or legality of the IJ's decision to deny bond; and (2) the constitutionality of his arrest and detention. Alonso-Portillo also requests discovery and an evidentiary hearing, as well as a preliminary injunction and leave to amend his petition. But first, the Court must assess jurisdiction.

### A. Jurisdiction

As a threshold matter, "[t]he fundamental question of subject-matter jurisdiction must precede any analysis of the merits on this matter." *Karki v. Jones*, No. 1:25-CV-281, 2025 U.S. Dist. LEXIS, at *9 (S.D. Ohio June 9, 2025). Both parties acknowledge that this inquiry requires examination not only of habeas corpus law and other federal statutes conferring jurisdiction, but also specific examination of 8 U.S.C. § 1252(g). Under 28 U.S.C. § 2241, district courts have the authority to grant a writ of habeas corpus to any petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Section 1252(g) of the immigration statute at issue, entitled "Judicial review of orders of removal," states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or

12

> action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

Here, Alonso-Portillo is raising only pre-removal, detention-based claims. He argues that this fact places his § 2241 action "outside the jurisdiction-stripping provisions of § 1252." (Doc. 6, PageID 40). Alternatively, he argues that "[t]o the extent that 8 U.S.C. § 1252 is construed to limit habeas review in this context, such a construction would raise serious constitutional questions under the Suspension Clause." (*Id.*, PageID 40).[3] Caselaw supports Alonso-Portillo's first argument, obviating any need for the Court to address the second.

Numerous courts have held that federal district courts retain jurisdiction under § 2241 to review habeas claims by noncitizen detainees, either to challenge their detention as unconstitutional or to raise legal questions regarding the government's statutory authority to detain them. *See, e.g.*, *Malam v. Adducci*, 452 F. Supp. 3d 643, 649 (E.D. Mich. 2020) (district court had jurisdiction to review validity of pre-removal detention) (citing *Rodriguez*, 583 U.S. 281 (2018)); *Lopez v. Barr*, 458 F. Supp. 2d 171, 175 (W.D.N.Y. 2020) ("District courts, however, can review claims by aliens challenging the constitutionality of their pre-removal detention.") (citing *Denmore v. Kim*, 538 U.S. 510, 516-17 (2003)); *Salvador F.-G. v. Noem*, No. 25-CV-

---

[3] The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. To challenge the constitutionality of § 1252(g) on Suspension Clause grounds, Alonso-Portillo would have to establish that (1) he is seeking "core" habeas relief, *i.e.*, immediate release; and (2) there is no adequate substitute to effectively challenge his detention. *Hamama v. Adducci*, 912 F.3d 869, 875-76 (6th Cir. 2018).

243, 2025 U.S. Dist. LEXIS 111539 (N.D. Okla. June 12, 2025); *J.C.G. v. Genalo*, No. 1:24-CV-8755, 2025 U.S. Dist. LEXIS 8279, at *9 (S.D.N.Y. Jan. 14, 2025) ("The jurisdiction conferred on federal courts by Section 2241 includes the authority to review noncitizen's claims challenging the constitutionality of their detention during the pendency of removal proceedings."). And a plain reading of the jurisdiction-excluding language in 8 U.S.C. § 1252(g) leads to the conclusion that it does not apply to decisions to detain a noncitizen pending removal proceedings.

The statute expressly excludes from judicial review "the decision or action by the Attorney General to *commence proceedings, adjudicate cases, or execute removal orders* against any alien under this chapter." 8 U.S.C. § 1252(g) (emphasis added); *see also Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (Section 1252(g) "applies only to three discrete actions that the Attorney General may take: her "decision or action" to commence proceedings, adjudicate cases, or execute removal orders."). *Reno* observed that there are "of course" many other decisions or actions that may be part of the deportation process, including but not limited to the decisions to open an investigation and to surveil the suspected offender. *Reno*, 525 U.S. at 482.

"It is implausible," the Court in *Reno* continued, "that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id*. The Court concludes that the decision under § 1226(a) to detain a non-criminal noncitizen here unlawfully pending a removal determination falls outside of the jurisdiction-divesting provisions set forth

in § 1252(g). The Court thus concludes that it properly exercises subject-matter jurisdiction over this petition.

## B. Exhaustion

Respondents argue that Alonso-Portillo's petition must be dismissed because he failed to exhaust all available administrative remedies. (Doc. 19, PageID 83-85). Alonso-Portillo counters that he has exhausted his remedies because he appealed the denial of bond to the BIA and filed an application to cancel his removal. He argues that he should not be precluded from seeking habeas relief while those proceedings are pending. (Doc. 21, PageID 198-99). He also argues that as he is being detained, ICE is actively pursuing his removal. (*Id.*, at 199). These arguments are well taken.

Alonso-Portillo has diligently pursued all administrative remedies, and his case presents substantial constitutional questions sufficient to excuse the judicially created exhaustion requirement. *See Ixchop Perez v. McAleen*, 435 F. Supp. 3d 1055 (N.D. Cal. 2020) (finding that the petitioner's appeal of IJ's bond decision to the BIA satisfied exhaustion requirement); *see also Lopez*, 458 F. Supp. 2d at 176 ("No statute requires an alien to exhaust administrative remedies before challenging detention. And courts can excuse a failure to exhaust if the case presents a substantial constitutional question."). Alonso-Portillo raises substantive Fourth Amendment violations and serious allegations of fabricated evidence. Because it is uncertain whether such questions can be raised or adjudicated in Immigration Court or before the BIA, Alonso-Portillo was not required to exhaust his administrative remedies before petitioning this Court. *Id.*; *see also Gomes v. Hyde*, No. 1:25-CV-11571, 2025

U.S. Dist. LEXIS 128085, at *13 (D. Mass. July 7, 2025) (excusing exhaustion where the petitioner was likely to experience irreparable harm because (1) the BIA's decision on appeal of bond decision was likely to exceed 200 days and (2) the underlying factual record was straightforward and undisputed).

While the underlying factual record in this case cannot accurately be characterized as "straightforward and undisputed," the Court is satisfied that Alonso-Portillo faces irreparable harm insofar as Respondents seem determined to hasten his removal. *See also Salvador F.-G.*, 2025 U.S. Dist. LEXIS 111539, *16 ("The Court likewise has found no clear statement from Congress that exhaustion is required before a noncitizen seeks habeas review to challenge pre-removal detention."); *J.C.G.*, 2025 U.S. Dist. LEXIS, *20 (excusing exhaustion requirement as futile). The Court therefore denies Respondents' request to dismiss this petition for failure to exhaust.

### C.  Pre-Removal Non-Criminal Detention

The INA gives DHS broad discretion and authority over detention matters. *Nielson v. Preap*, 586 U.S. 392, 397 (2019); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021) ("The INA further provides that DHS may arrest and detain [an] alien, 'pending a decision on whether the alien is to be removed from the United States.'" (quoting 8 U.S.C. § 1226(a)); *Martinez v. Larose*, 968 F.3d 555, 560 (6th Cir. 2020) ("[T]he plain text of § 1226(a) is clear that it applies to the detention of aliens who are awaiting a decision on whether they are to be removed from the United States."). "In the exercise of its broad power over naturalization and immigration," the Supreme Court has held, "Congress regularly makes rules that would be

unacceptable if applied to citizens." *Denmore v. Kim*, 538 U.S. 510, 521 (2003) (citations omitted).

Section 1226(a) of the INA governs non-mandatory pre-removal detention for noncitizens already in the country (as opposed to those seeking admission into the country). *Rodriguez*, 583 U.S. at 288-89. Under that provision, the government may arrest and detain a noncitizen unlawfully in the United States pending a decision on whether that individual is to be removed from the country. A noncitizen "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the [DHS Secretary], is inadmissible" and removable. 8 U.S.C. § 1182(a)(6)(A)(i). Respondents assert that Alonso-Portillo has neither been admitted nor paroled, and is thus removable. (Doc. 19, PageID 95). And although Alonso-Portillo contends that he indisputably qualifies for cancellation of removal, (Doc. 21, PageID 198), that determination has not yet been made by an IJ and cannot be made here under the circumstances.

Persons detained under § 1226(a) pending removal proceedings are entitled to a bond hearing. *See Guzman Chavez*, 594 U.S. at 526 (2021). Any bond decision is appealable to the BIA. 8 C.F.R. § 1003.19(f). Additionally, a noncitizen detained pending removal proceedings may request a redetermination of the denial of bond if his circumstances have "materially changed." 8 C.F.R. § 1003.19(e). *See Salvador F.-G.*, 2025 U.S. Dist. LEXIS 111539, *24. But the foregoing does not benefit Alonso-Portillo.

Alonso-Portillo is not entitled to review by this Court of the IJ's discretionary

17

decision to deny his request for bond. And where, as here, a noncitizen is denied bond via an unreviewable decision by an IJ and does not present a material change in his circumstances, Alonso-Portillo fails to cite, and the Court is not aware of, any authority precluding the continued detention of the individual pending his removal proceedings. *See, e.g.*, *El Gamal v. Noem*, No. SA-25-CV-664, 2025 U.S. Dist. LEXIS 130671, at *11 (W.D. Tex. July 2, 2025) ("As the Court previously suggested . . . it lacks authority to review an exercise of [DHS]'s discretion under § 1226(a) to detain pending a decision on whether an alien is to be removed from the United States.") (collecting cases); *but see Martinez v. Hyde*, No. 25-11613, 2025 U.S. Dist. LEXIS 141724 (D. Mass. July 24, 2025) (granting immediate release pursuant to § 2241 because the government did not produce sufficient documentation that the petitioner was detained pursuant to § 1226(a)). The exception to the rule does not benefit Alonso-Portillo here.

Courts have also granted release from pre-removal detention under § 1226(a)—or, more commonly, an initial bond hearing or redetermination of bond—in cases of "prolonged detention." There is no bright-line rule as to what constitutes "prolonged detention." *See Rodriguez*, 583 U.S. at 306 (overruling Ninth Circuit precedent that required bond hearings every six months). In any event, Alonso-Portillo's to-date detention falls short of what courts have deemed "prolonged detention." That is especially so because he did receive an individualized bond hearing and has appealed the IJ's bond decision to the BIA. *See Jose L.P. v. Whitaker*, 431 F. Supp. 3d 540, 551-52 (D.N.J. 2019) (pre-removal detainee held under § 1226(a) for eighteen months was

18

not entitled to a second bond hearing after already receiving an individualized hearing before the IJ and unsuccessfully appealing that decision to the BIA); *see also Rodgriguez v. Perry*, 747 F. Supp. 2d 911, 917 (E.D. Va. 2024) (finding that a fourteen-month pre-removal detention was not so unreasonably prolonged as to require immediate release); *L.G. v. Choate*, 744 F. Supp. 2d 1172, 1184, 1187 (D. Colo. 2024) (finding that discretionary pre-removal detention for more than thirty months entitled the detainee to a bond hearing, but not immediate relief); *Lopez*, 458 F. Supp. 2d at 179 (finding that a fifteen-month pre-removal detention was not unreasonably prolonged to require another bond hearing).

At this time, the Court has no alternative but to conclude that Alonso-Portillo is being detained lawfully pursuant to 8 U.S.C. § 1226(a). His individualized claims do not entitle him to the relief he seeks on this front.

### D. Alonso-Portillo's Claims

**1.** *Detention and Denial of Bond Violate the INA & the Fifth Amendment*

Alonso-Portillo argues that his detention violates the INA and the Due Process Clause of the Fifth Amendment. (Doc. 6, PageID 44, 46-47, 50-52). He posits that the IJ's reliance on his possession of firearms as evidence that he posed a danger to the community was defective because his possession of firearms in was lawful conduct under both Ohio law and the Second Amendment. He further argues that the IJ failed to consider other mitigating factors, such as his lack of any criminal history, longstanding ties to the community, home ownership, payment of taxes, and hardship to his family. Alonso-Portillo thus contends that the bond hearing failed to comport

with procedural and substantive due process.

District courts have jurisdiction to review an IJ's decision to deny bond, but that review is circumscribed. Another district court in this Circuit explained the limitations on such review:

> In the context of an immigration bond hearing, district courts have jurisdiction to review [an] Immigration Judge's discretionary bond denial only "where that bond denial is challenged as legally erroneous or unconstitutional." *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762 (N.D. Cal. 2019). But a district court sitting in habeas to review due process challenges to immigration bond hearings must proceed carefully, as "it has no authority to encroach upon an IJ's discretionary weighing of evidence." *Arellano v. Sessions*, 2019 WL 3387210, at *7 (W.D.N.Y. 2019). Instead, courts must decide whether the IJ "relied upon proof—that as a matter of law—could not establish" that a petitioner is a danger to the community. *Judulang v. Chertoff*, 562 F. Supp. 2d 1119, 1127 (S.D. Cal. 2008). For example, the Supreme Court has limited "preventative detention based on dangerousness only when limited to specially dangerousness individuals and subject to strong procedural protections." *Zadvydas*, 533 U.S. at 691, 121 S.Ct. 2491. Detention based on dangerousness, without an adequate showing by the government, "would be antithetical to the Fifth Amendment's Due Process Clause protections." *Hamama v. Adducci*, 2019 WL 1492038, at *2 (E.D. Mich. 2019).

*Diaz-Calderon v. Barr*, 535 F. Supp. 3d 669, 675-6 (E.D. Mich. 2020).

Notwithstanding Alonso-Portillo's claim that the IJ's decision-making was unconstitutional, his arguments are precisely the type deemed unreviewable by controlling authority. As noted above, federal district courts generally are without jurisdiction to review the discretionary weighing of evidence in support of a decision

to deny bond. *See El Gamal*, 2025 U.S. Dist. LEXIS 130671. Even if the Court could review the IJ's discretionary decision, and specifically its reliance on Alonso-Portillo's possession of firearms as evidence that he posed a danger to the community, Alonso-Portillo simply cannot argue that his possession of firearms was lawful. It was not. Respondents correctly assert that possession of firearms by a person unlawfully in the United States is prohibited by 18 U.S.C. § 922(g)(5). That is true whether Alonso-Portillo has been charged under that statute or not.

The Court concludes that Alonso-Portillo was afforded sufficient procedural due process comporting with the Fifth Amendment. A bond hearing was conducted within two weeks of his detention. He had the opportunity to be heard, to present evidence, and to make arguments. *See Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (finding compliance with the fundamental requirement of due process where the petitioner had "the opportunity to be heard at a meaningful time and in a meaningful manner."). And, with the assistance of counsel, he has appealed the bond decision to the BIA.

In the Court's review, in most cases where a writ issued under § 2241, the relief granted was not immediate release, but rather requiring a constitutionally compliant bond hearing. *See, e.g.*, *L.G.*, 744 F. Supp. 3d at 1187; *Rosciszewski v. Adducci*, 983 F. Supp. 2d 910 (E.D. Mich. 2013); *Khodr v. Adduci*, 697 F. Supp. 2d 774, 775 (E.D. Mich. 2010) ("The Court will grant Petitioner's writ of habeas corpus and remand the case to the Detroit Immigration Court so that an immigration judge can provide Petitioner with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a). If the

Immigration Court does not provide a hearing within 21 days of the date of this order, Respondent shall release Petitioner from custody."). The Court finds that Alonso-Portillo was afforded a constitutionally compliant bond hearing and therefore denies his due process claim on that point.

**2.** *Arrest and Search Violated the Fourth Amendment*

Alonso-Portillo asserts that in the Sixth Circuit, district courts retain jurisdiction over due process claims where a habeas petition challenges only the constitutionality of the petitioner's arrest and detention. (Doc. 6, PageID 50). As noted, Alonso-Portillo reasons that because his detention arose from an arrest, a search, and a seizure that violated the Fourth Amendment, his detention is unconstitutional, and the Court should issue an order for his immediate release. (*Id.*, PageID 44-45, 51).

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause. . . ." U.S. Const. amend. IV. Ordinarily, officers must have a valid judicial warrant based on probable cause to arrest an individual. Probable cause exists if facts and circumstances are "sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Exigent circumstances, which may provide exceptions, involve situations where officers face immediate and serious consequences if they postpone arrest to obtain a warrant. *Thacker v. City of Columbus*, 328 F.3d 244, 253 (6th Cir. 2003); *cf. United*

*States v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir. 1996) (elaborating on the categories of exigent circumstances).

As to Alonso-Portillo's three-pronged challenge, prolonged discussion of well-established Fourth Amendment jurisprudence is unnecessary. Here, it is sufficient to note that Alonso-Portillo argues his arrest was unsupported by a valid judicial warrant, a valid administrative warrant, a valid removal order, probable cause, or exigent circumstances. Although voluntary consent provides a lawful basis for a warrantless search, *see United States v. Parrish*, 942 F.3d 289, 294 (6th Cir. 2019); *but see Bumper v. North Carolina*, 391 U.S. 543, 548 (1968) (holding that consent must be freely and voluntarily given), and Respondents contend that Alonso-Portillo verbally consented to a search of his home, Alonso-Portillo disputes this, stating in his sworn affidavit that agents threated to detain his wife if he did not allow them to enter. (Doc. 21, PageID 182-83).

To that end, Alonso-Portillo argues that the seizure of firearms from his home violated his Fourth Amendment rights because the firearms, which apparently provided the basis for the IJ to find that Alonso-Portillo posed a danger to the community, were fruits of an unlawful search. When evidence is obtained in violation of the Fourth Amendment, ordinarily, that evidence is suppressed "as so-called fruit of the poisonous tree." *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (internal quotation marks and citation omitted). The parties differ on whether the alleged conduct was sufficiently egregious or widespread to allow the use of the exclusionary rule in civil immigration proceedings, *see, e.g.*, *Oliva-Ramos v. Att'y Gen.*, 694 F.3d 259, 270-82

(3d Cir. 2012), but the Court need not resolve that question at this juncture.

Traditional application of the exclusionary rule results in the suppression of evidence, as "fruits of the poisonous tree," obtained in violation of the Fourth Amendment. But the rule does not, as Alonso-Portillo asserts here, dictate his immediate release from detention. And Alonso-Portillo does not cite any authority establishing that when a noncitizen's detention results from actions that violate the Fourth Amendment, the remedy is termination of the detention and the detainee's immediate release.

In any event, "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that the unlawful arrest, search, or interrogation occurred." *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984); *De Oliveira v. Joyce*, No. 2:25-CV-291, 2025 U.S. Dist. LEXIS 125776, at *11 (D. Me. July 2, 2025). Thus, without expressing any opinion as to the merits of Alonso-Portillo's underlying Fourth Amendment claims, the Court concludes that Alonso-Portillo's ongoing detention under the INA's discretionary detention scheme may stand.

**3.** *Seizure of Firearms Violated the Second and Fourth Amendments*

Alonso-Portillo argues that the firearms seized from his home were lawfully owned under the Second Amendment and Article I, Section 4 of the Oho Constitution. (Doc. 6, PageID 45-46). He further argues that the entry into his home and resulting documentation and seizure of property was effectuated without a judicial warrant, probable cause, or voluntary consent. But Alonso-Portillo's arguments simply do not

sound in habeas. Even if his arguments were meritorious, the remedy for such violations is not immediate release or bond redetermination.

Moreover, the Court would also be remiss if it did not address the fact that 18 U.S.C. § 922(g)(5)(A) indisputably bars noncitizens unlawfully in the United States from possessing firearms. Courts have found § 922(g)(5)(A) constitutional on its face and as applied. *United States v. Lopez*, 929 F.3d 783, 785-86 (6th Cir. 2019); *United States v. Rangel-Tapia*, No. 23-1220, 2024 U.S. App. LEXIS 5591, at *8-9 (6th Cir. Mar. 6, 2024). And because the record establishes that Alonso-Portillo knew he was not lawfully present in the United States, it is immaterial in this context that Alonso-Portillo has not been charged with a violation of that statute. Alonso-Portillo's argument that HSTF agents' seizure of his firearms violated his Second and Fourth Amendment rights thus fails to establish a claim for which § 2241 relief may be granted.

### 4. *Fifth Amendment Equal Protection Claim*

Alonso-Portillo argues that the "the government's conduct in this case … raises serious equal protection concerns." (Doc. 6, PageID 47-48, 52). Specifically, he argues that "[t]he government's use of Petitioner's lawful firearm possession and immigrant status to justify detention reflects disparate treatment without lawful justification." (*Id.*, PageID 52). But the alleged Equal Protection violation does not entitle him to immediate release or a bond redetermination. Beyond that, the Court has already addressed and rejected any argument that Alonso-Portillo's possession of firearms was lawful.

**5.** *First Amendment Claim*

Alonso-Portillo argues for the first time in his reply that HSTF agents' reliance on a sign outside of his home—stating that the home was protected by firearms—as reasonable basis for suspicion that he was in violation of any laws had a chilling effect on his exercise of First Amendment rights.[4] (Doc. 21, PageID 195-96). Generally, claims raised for the first time in a reply or traverse are not properly before the Court. *See, e.g.*, *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) (a district court may decline to review a claim raised for the first time in the traverse). Regardless, Alonso-Portillo's claim fails because, even if meritorious, it fails to provide a basis for granting § 2241 relief.

**6.** *Ability to Satisfy Factors for Cancellation of Removal*

Alonso-Portillo also argues for the first time in his reply that because he "indisputably satisfies" the criteria for cancellation of his removal, his removal is not reasonably foreseeable and his continued detention is unlawful. (Doc. 21, PageID 198). Again, notwithstanding the general impropriety of raising new claims in a reply, Alonso-Portillo's argument cannot prevail here. As noted throughout this order, the removal determination has not yet been made in Immigration Court. And it would be improvident for the Court to opine about an issue—whether Alonso-Portillo is removable—over which the Court arguably would lack subject-matter jurisdiction in the first place.

---

[4] Alonso-Portillo also filed a motion for leave to amend his Petition to add this First Amendment claim. (Doc. 22). But, as discussed below, that motion must be denied because amendment would be futile.

## V.     REQUEST FOR DISCOVERY

Alonso-Portillo requests discovery to resolve the factual discrepancies alleged in this case. (*Id.*, PageID 184). Specifically, the request seeks (1) all administrative, investigatory, and criminal records concerning Alonso-Portillo in Respondents' possession; (2)  production of any warrant(s) used to justify the arrest and/or search of Alonso-Portillo; (3)  depositions of ICE agents or other officials involved in Alonso-Portillo's apprehension; and (4) any body camera, video surveillance, or contemporaneous notes or recordings related to the encounter. (*Id.*, PageID 184, 201). But Alonso-Portillo's request must be denied.

Habeas corpus actions are unique. The liberal discovery mechanisms contained in the Federal Rules of Civil Procedure do not automatically apply, and "[a] habeas petitioner . . . is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *see also Harris v. Nelson*, 394 U.S. 286, 295 (1969) (holding that the "broad discovery provisions" of the Federal Rules do not apply in habeas corpus proceedings). Instead, the Rule 6(a) of the Rules Governing Section 2254 Cases provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."[5] Under this "good cause" standard, a district court may grant leave to conduct discovery in habeas corpus proceedings only "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are more

---

[5] Rule 6(a)'s good-cause standard applies to habeas corpus cases brought under § 2241. *See Nicely v. Tenn. Dep't of Corr.*, No. 3:22-CV-242, 2023 U.S. Dist. LEXIS 171489, at *17 n.4 (M.D. Tenn. Sept. 26, 2023).

fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908-09 (quoting *Harris*, 394 U.S. at 300); *see also Williams v. Bagley*, 380 F.3d 932, 974-75 (6th Cir. 2004); *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). Consequently, a habeas petitioner must overcome the good-cause hurdle before engaging in discovery.

A petitioner seeking relief under § 2241 must show that "[h]e is in custody in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2241(c)(3). Alonso-Portillo argues that agents—who never identified themselves or displayed law enforcement badges or credentials—arrested and searched him without a valid judicial warrant, probable cause, or exigent circumstances. To prevail on his request for discovery, Alonso-Portillo must show that the discovery he seeks is materially relevant to establishing that his detention violates federal law and likely to "resolve any factual disputes that could entitle him to relief." *Williams v. Bagley*, 380 F.3d at 975 (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)). He cannot do so.

To be sure, there are material factual disputes in this case that go to the core of Alonso-Portillo's claims for relief. Alonso-Portillo explicitly disputes Respondents' assertions that (1) HSTF agents had an administrative warrant for arrest *in hand* at the time of his arrest; (2) he admitted to agents, at the time of his arrest, that he was in the United States unlawfully; and (3) he voluntarily gave verbal consent for agents to enter and search his home for firearms. But because Alonso-Portillo's claims do not sound in habeas, even the resolution of those disputed material facts in his favor

would not result in the relief he seeks.

The Court would, however, be remiss if it did not address grave allegations that the record in this case contains evidence fabricated by Respondents. Alonso-Portillo asserts that Respondents generated an administrative arrest warrant and removal order *after* his arrest, and then falsified the documents to appear as though they were issued *prior* to his arrest. The record pits Alonso-Portillo's sworn affidavit (averring that no warrant was shown to him or referenced at the time of his arrest), (Doc. 21, PageID 207-08), against sworn declarations from two immigration agents (averring that a warrant was presented to Alonso-Portillo at the time of his arrest), (Doc. 19, PageID 96, 99, 171-72).

The record also contains two versions of an administrative arrest warrant—one purportedly executed at Alonso-Portillo's residence, (*Id.*, PageID 107), and the other purportedly executed at the immigration facility in Blue Ash, (*Id.*, PageID 108)—that raise as many questions as they answer; specifically, (1) the documents are electronically generated and signed, and the signature line for an interpreter is blank, even though Respondents maintain that the warrant was presented to Alonso-Portillo in English and Spanish; (2) the first version, purportedly obtained prior to Alonso-Portillo's arrest, lists as evidence of probable cause statements that Alonso-Portillo allegedly first made at the time of his arrest; and (3) both versions also list as probable cause "other reliable evidence," but nowhere in those warrants or the other exhibits submitted by Respondents is such "other reliable evidence" apparent. Respondents concede, and their own exhibits establish, that Alonso-Portillo had no

criminal history or record of immigration violations.

Unconscionable and unethical conduct such as this, if proven, would warrant severe sanctions. But because habeas relief cannot issue in this instance, the Court must be satisfied for the time being with issuing a strong and unequivocal reminder that the duty of candor is not optional and perjury is a serious offense that undermines the integrity of the legal system and invites untold harms.

## VI.   MOTION TO AMEND

On July 7, 2025, Alonso-Portillo filed a motion for leave to amend his petition. (Doc. 22). Respondents responded in opposition that motion, (Doc. 24), and Alonso-Portillo replied, (Doc. 26). Because the amendment Alonso-Portillo seeks would be futile, the motion must be denied.

A motion to amend a habeas corpus petition is, per 28 U.S.C. § 2242, subject to the same standards which apply generally to motions to amend under Federal Rule of Civil Procedure 15(a).  The general standard for considering a motion to amend under that rule was distilled by the United States Supreme Court in *Foman v. Davis*:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of any allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

371 U.S. 178, 182 (1962). In considering whether to grant a motion to amend under

Rule 15, a court should consider whether the amendment would be futile, *i.e.*, if it could withstand a motion to dismiss under Rule 12(b)(6). *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005).

Alonso-Portillo seeks leave to add a claim arguing that the HSTF agents' reliance on the sign outside of his home as reasonable basis for suspicion that he was in violation of any laws had a chilling effect on his exercise of First Amendment rights. (Doc. 22, PageID 392-93). Alonso-Portillo first raised these allegations in his reply. (Doc. 21, PageID 195-96). Respondents urge the Court to deny Alonso-Portillo's motion because he failed to exhaust administrative remedies and because the amendment would be futile for failure to state a claim upon which relief can be granted. (Doc. 24, PageID 409). Indeed, even if the claim is factually accurate and legally meritorious in a vacuum, it cannot provide a basis for granting habeas relief. As a result, amendment would be futile.

## VII.   CONCLUSION

For the foregoing reasons, Alonso-Portillo's claims are **DENIED**, and the petition for a writ of habeas corpus is **DISMISSED**. Further, Alonso-Portillo's motion to amend and request for discovery are **DENIED**, and the motion for a preliminary injunction is **DENIED** as moot.

**IT IS SO ORDERED.**

*/s/ Michael R. Barrett*
Michael R. Barrett
United States District Judge